*174 OPINION.
Black :
The only question for decision is whether the amounts of $16,469.34 and $68,645.09 paid by petitioner in 1926 and 1927, respectively, on account of his liabilities as endorser or guarantor were deductible losses for those years, or capital expenditures or investments.
Pertinent provisions of the Revenue Act of 1926 are:
Sec. 214. (a) In computing net income there shall be allowed as deductions:
*******
(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;
(5) Losses sustained during the taxable year and not compensated for by
insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; * ⅜ ⅜
*******
(7) Debts ascertained to be worthless and charged off within the taxable year ⅜ * ⅜.
Briefly stated, it is contended by the petitioner that the payments made by him were in liquidation of an individual liability, that he could not legally claim payment from the Menihan Co., and that they were not capital expenditures. Respondent claims that the payments were not losses or bad debts, but were capital expenditures.
Manifestly if the only issue we had to decide was whether or not the $16,469.34 and $68,645.09 in question were debts ascertained to be worthless and charged off within the respective taxable years, we would have to decide that they were not. Respondent in his deficiency notice stated that he was disallowing the items because they were not bad debts. We agree with respondent that these amounts did not represent bad debts at all.
The petitioner was endorser or guarantor on a large amount of the indebtedness of the Menihan Co. If the Menihan Co. had paid as far as it could pay on this indebtedness and thereafter the petitioner had paid the balance under his guaranty, he would have been subro-gated to the rights of the creditors and whatever amounts he might have paid under such circumstances would have immediately become a debt due to him by the Menihan Co., and if thereafter it had been demonstrated that the debt was worthless petitioner could have charged it off and secured a proper deduction from his gross income as provided by statute. But petitioner did not have the right of subrogation against the Menihan Co. because he did not pay the entire remainder of the debt, which is requisite before subrogation is allowable. Moreover he expressly waived his right of subrogation. Charles M. Howell, 22 B.T.A. 140. So whatever deductions, if any, petitioner is entitled to take on account of the payments made must be taken as losses, and not as debts against the Menihan Co. ascertained to be worthless and charged off.
*175 Petitioner recognizes this situation and in his petition makes no claim that the amounts in question represent debts ascertained to he worthless and charged off. He does claim, however, that the amounts represent losses incurred in his trade or business or in transactions entered into for profit and are therefore allowable deductions under the statute.
Did petitioner really sustain any losses from the transactions narrated in our findings of fact? We think none have been satisfactorily proved. Losses to be deductible must be from closed and completed transactions. Undoubtedly petitioner made payments of $16,469.34 in 1926 and $68,645.09 in 1927 in compromise settlement of his guaranty or endorsement of the Menihan Co.’s indebtedness, but we cannot say that these payments resulted in any loss to petitioner. If taken alone and without reference to other facts proved in the proceeding, perhaps we might say that they did result in losses. But all the facts proved, taken together, show that by means of the settlement which the Menihan Co. effected with its creditors and the settlement which petitioner made in respect to his guaranty liability, all of which transactions were intimately connected with each other, the Menihan Co. was financially rehabilitated and petitioner’s stock therein was made valuable.
In 1927, the year in which petitioner claims a $68,645.09 loss by reason of a payment made under his guaranty liability, his stock in the Menihan Co. was returned to him and in that same year the Menihan Co. was reorganized and petitioner received 5,000 shares of preferred stock of a par value of $100 per share and 19,000 shares of common stock of no par value in the reorganized corporation. No evidence was offered as to the fair market value of the preferred stock in the reorganized company, but evidence was given that some of the common stock of the company which was taken by others at the time of the reorganization was sold to them for $10 per share.
What profit, if any, petitioner realized from the reorganization of the Menihan Co. which took place in 1927, after all the indebtedness of the Menihan Co. had either been fully paid or satisfactorily settled and petitioner had been released from his liability as endorser and guarantor and his stock had been returned to him, we do not know. The complete facts with reference to this reorganization are not before us. However from such facts as are before us with reference to all these transactions, we cannot say that petitioner has sustained any loss. Whatever losses were sustained seem to have been sustained by the creditors and not by petitioner.
As we view it, the payments which petitioner made in compromise of his guaranty and endorsement liabilities, under the particular circumstances in this case, were capital payments which yielded him good results, and we know of no provision of law which would entitle him to claim them as deductible losses.
*176 Petitioner urges in support of his contentions our decision in John P. Dillon, 9 B.T.A. 177. We think however that the facts in that case are distinguishable from those in the instant case. In the Dillon case the taxpayer, together with other former stockholders of the Farmers National Bank, a closed bank, had guaranteed $100,000 of the old paper of the closed bank, which had been taken over by a new bank, the Sterling National Bank. In 1921 these guarantors were called upon to make good their guaranty and Dillon paid $28,000 in settlement of his obligation thereunder. The facts further showed that Dillon was never reimbursed in any way for this payment and that moreover the payment did not rehabilitate the bank and make Dillon’s stock in the bank more valuable. On the contrary, the new bank closed its doors the following year.
We do not think therefore that our allowance of the loss in the Dillon case, under the circumstances which existed therein, can be taken as a precedent which would authorize the allowance of the losses which petitioner claims in the instant case.
Reviewed by the Board.

Decision will be entered for respondent.

Tkammell, ARUndell, Seawell, and Adams dissent.